Good morning, and welcome to day two of our stint here in Atlanta. Judges Grant and Abudu and I are pleased to see you. Happy holidays to all of you. This morning we've got four cases. Before we get going, I'll just give you a few preliminaries. Number one, please know that we've read your briefs, the underlying materials, cases, statutes, records, so don't waste your own time with a bunch of factual and procedural ramp-up. It's unnecessary. Just go straight to the heart of your case. Number two, we have a traffic light system, which I'm sure you'll understand intuitively. Green is go, yellow, please slow down, red, please wind up. As I said yesterday, I'm unlikely to cut you off in the middle of a syllable, but I would ask that you respect the court's time and wind your presentation up. All right, so with that, we'll start with the first case, 23-13-501, Florida Preborn Rescue v. The City of Clearwater. We've got Mr. Brooks here for the appellants, Mr. LaRoe here for the appellee. Mr. Brooks, whenever you're ready, it looks like you've reserved three minutes for rebuttal. Yes, Your Honor, that's correct. Very well. Thank you, Your Honor. Thank you, Your Honors, and may it please the Court. My name is Tyler Brooks of the Thomas Moore Society and I am appearing here with my colleague and others seeking reversal of the district court's denial of our motion for a preliminary injunction. Can I ask you one question just at the outset to set the stage and you may understand the  But in net choice, the Supreme Court said, hey, like in the Eleventh Circuit, nobody talked about whether this was facial or as applied and that may be an issue. Can you explain to me the nature of the challenge here? Is this facial? What's left before us? Is that a facial challenge? We do make a facial challenge. In our complaint below, which still has remained pending, we have not had dispositive motions below, we have raised as applied challenges as well, including onto some other claims that are not strictly First Amendment claims of this nature. But this, because of the fact-bound nature of those other claims, we moved solely on facial grounds for a preliminary injunction as to this ordinance. Okay, that's good. I just needed clarification on it. Yes, Your Honor. In a facial challenge, would you say the only remedy, if we agreed with you that the policy was unconstitutional, would the only remedy be a complete declaration that it's unconstitutional or would there be, would you also be satisfied with, say, applying the policy only on Saturday or something like that? Well, so part of that, the answer to that question is that we actually, then discovery was limited. We, the plaintiffs, don't know exactly what happens on Saturdays. We had to rely on evidence from the city as to what happened on Saturdays. It is our view that based on what the city produced, that that does not meet the standard for an injunction, but at the same time, we recognize that that might present issues, maybe perhaps with standing or the like, and we only go on Tuesdays and Thursdays, and if the ruling of the court was only to be limited to Tuesdays and Thursdays, we could certainly recognize that as an appropriate exercise of the court's rule. Does that make it more like an as-applied challenge to your group on Tuesdays and Thursdays? No, because I think we're looking at what evidence, what the evidence was that was actually, can be adduced in support of the ordinance, and that is a facial challenge, regardless of which day you're looking at. Okay. Would you, this is shifting gears a little bit, so I want to make sure Judge Grant feels like she's got an answer. Would you object to an ordinance that applied only within the width of the driveway itself, or is this case really about the, is it what, the eighteen feet that is the driveway, or is it really about the five feet on either side? It is about that entire width, Your Honor, oh, sorry, that entire width, Your Honor. It is within the driveway itself. So, all right, I see. So you would claim not only a First Amendment right to be within the five foot, what I'll call buffer, but also to obstruct the driveway itself? No, we do not claim a right to obstruct, because this is a public sidewalk. People walk down this sidewalk all the time, and we have a very clear and established record of being able to go into the sidewalk when a person chooses to stop and receive literature, and we provide that literature, and we are trained very carefully to make sure that that does not result in the obstruction of the free flow of traffic. So if another car comes along, we move along. And so we do not claim any right to obstruct. Obviously, obstruction would also run up against things like the FACE Act. We do not do anything like that. But you are categorically opposed, essentially, to any buffer zone, given some of the cases that you cite to have buffer zones that are much bigger or wider than five feet. So based on your statement or clarification, is it correct to conclude that you're categorically opposed to buffer zones, period? I mean, I think the effective answer is yes, because McClellan has directed that every buffer zone must be judged by the needs of the situation at hand. A buffer zone is not to be measured by the matter of feet that are involved, but by what the interest is that is trying to be served, and how does the activity that is being limited affect or bring effect to that interest? And here, we have never had any incidents. We've never had any accidents. We've never had any near misses. The police officers have never had any issues with us at all. That's undisputed. And yet, we can no longer do what we have done for years. And the district court said that it was a private driveway. I assume, based on your statements, that you disagree and you say it was a public driveway. Well, not only do we disagree, the City of Clearwater itself disagreed, because what it recited, when included in its recitals of the ordinance, it said itself that it is a public driveway. It is where the public sidewalk crosses the driveway that comes out of the facility. So pedestrians all day long would go up and down this driveway. How deep in the driveway did your members go before this buffer, and how deep into the driveway do you wish to go now? Oh, only into the public right of way. Just the public portion. Just the public right of way. We never trespass. We claim no rights. We never trespass upon any private property. And that was actually what the City of Clearwater said. That's why they couldn't just say that this would become trespassing henceforth, because this is a public right of way. People ride bikes, walk their dog, go to the publics, using this public sidewalk all day and all night long. If a kid is riding their bike now, do they fall within the buffer zone as well? The police have said, given contradictory statements, by the clear terms of the ordinance, they cannot do that during the hours of the day that the buffer zone is operative. At the hearing, police officers testified that they might give a warning or they might just look the other way. That is an ambiguous question as to whether they can do that or not. But on its face, the statute, the ordinance would preclude pedestrians, bike riders, whatever, right? Yes, Your Honor. Absolutely. But you're not making any argument here about content-based enforcement, correct? Not as to, not as to their ability, because those people aren't speaking. We're not, we're not trying to say that they're speaking and we're, and we are and that therefore there's some sort of content-based discrimination there, no. But with respect to also the, I think, escorts, you're not, I understand, I think you've preserved that argument below in some sense, but you're not asking us to decide that there's a content distinction or a viewpoint distinction, right? That is correct. We have asked to preserve that below because that, we do feel to be a below, I'm sorry, a argument that requires greater factual development that can be determined based on the face of the ordinance and based on other cases that are out there like Kilby, Colorado, and even McCullen, especially when McCullen is read in connection with Justice Scalia's concurrence in McCullen, which took issue with the determination that accepting escorts was not a content, was not rendering the ordinance content-based. And Hill, too, had some separate writings on that in that regard, right? Yes. Hill is, at this moment, potentially up for further revision before the Supreme Court. But we're arguing the law as it stands now, not constrained as we are. And I just want to clarify, because you made reference to your client's history of not having any issues with law enforcement. How does that play in, given that before us, it's just the facial challenge? Because I also was going to go down the road of the testimony of law enforcement, saying indeed they have had issues of disruption and maybe violence. But is that not relevant for purposes of your facial challenge? There is no such testimony from law enforcement about our clients in that regard. As a matter of fact, all of the testimony from law enforcement about our clients in that regard is wholly exculpatory. That doesn't matter for your facial challenge. I guess I'm just trying to understand, is that relevant in terms of digging into your client's history and the reasons that law enforcement gave for supporting the ordinance? Such evidence is definitely relevant in the question of narrow tailoring and determination of what is the problem to be remedied and what are the means chosen, narrowly tailored, to fit that remedy. And that's why we say here there's a whole disconnect between any effort, say for instance, the issue of noise, as some people complain about or have complained about noise on Saturdays. This is not an ordinance that does anything about noise. It does not do anything to regulate size of crowds, say the number of people that congregate in one area. It doesn't do anything about that. It only targets our sidewall counseling, which occurs on Tuesdays and Thursdays in a very calm setting, a very sedate setting, where all we want to do is be able to approach people in a very calm and caring manner and let them see our expression, let them see our nonverbal cues, let them know that we're here to help them. We're not here to push them. Are there other clinics in Clearwater? Because the ordinance only applies to Bread and Roses as opposed to, I think it was the Sister's case where it was all medical facilities. So were there other facilities in Clearwater that could have been subject and were not? At the time of this ordinance, I believe that Clearwater was the only facility that would be, I guess you would say, a dedicated abortion facility or reproductive health facility. There may have been other facilities where abortions could have been obtained, but I'll also defer to my colleague who represents the city if he knows more, especially if he So this ordinance only pertains to this particular clinic, which means for clinics maybe in this region and around the state, you would, unless there's another ordinance similar to this one, you could engage in the behavior that you're wanting to advocate for now, correct? But we could not engage the women that want to go to this clinic. And we have a very important message that is a very special message. To target this clinic that's focused on this clinic, not your ability in the broader scheme. Absolutely. Because every single woman who chooses to go to this clinic, we have a very special message for her, which is that she is special. She is cared about. We have resources for her and we would like to help her, not make her feel judged, put upon or anything of the like. We have special resources for her. We want to have a personal connection with her. Can I just follow up briefly on Judge Abudu's earlier questions about the sort of facial and as applied nature of the challenge? And I'm sorry if I'm kind of hung up on this, but I guess I have some of the same questions that she does, because it sounds like you say we're making a facial challenge, but then a lot of the argumentation is about the specialness of your situation, your clients. Is the idea that you can use sort of evidence specific to your situation and your clients to demonstrate that this statute is not narrowly tailored and ordinance is not narrowly  And if an ordinance is not narrowly tailored, then it is facially invalid? I mean, that seems to me sort of what the Sixth Circuit said in the Sisters for Life case. And I'm just trying to get my head around, I think, some of the same things that Judge Abudu is trying to get her head around. How can we, to what extent can we use the facts of this case in service of a facial challenge? Well, Your Honor, yes, I agree. We are following the Sixth Circuit's guidance, what Chief Justice Sutton wrote in the Sisters for Life case. I believe that the conceptual difficulty perhaps arises is because when you're trying to target a particular ill, especially in the context of free speech, one must do that with particular precision because of narrow tailoring. And so we have to look at what are the specific facts, say, for instance, on a Tuesday and Thursday. And the broad brush strokes are verboten. As I said, a painted line on the sidewalk is easy to enforce, but the First Amendment requires more. And that's why it does require an analysis of what are the particular facts of that case. And I'll just say it's because it's also relevant, I think, that none of the folks from the Saturdays are there on the Tuesdays and Thursdays. So we're not just looking to us in particular. It is about the setting of the Tuesdays and the Thursdays as well. We're not saying that we're special on Tuesdays and Thursdays because we're special on Tuesdays and Thursdays. We're saying we're special because of the entire environment of Tuesdays and Thursdays. Just as if you were to make a determination, as courts sometimes have to, about whether it's appropriate to prohibit soliciting on this particular roadway or median, it's a particular decision based on the nature of that geographical entity and the traffic flows and the number of people that are there and the like. So the tension, I think, between facial and as applied comes from the fact that in the case of Florida, we are commanded to make tight means-ends connections. Okay. Very well. I have one factual question before we finish up. I think several of your clients, or maybe just one mainly, discussed the fact that before the ordinance they handed out a large number of pamphlets and then after that has gone down greatly. Can you tell me if that diminishment coincided at all with Florida's new restrictions on the number of weeks after which the procedure could happen? I believe that the decline began before the legal restrictions, if my research is correct, and I believe it's probably also continued to go down, but the big spike was that he could no longer approach and get someone to take literature from him. So there's no evidence, or it hasn't been argued, and I'll ask your friend on the other side too, that this lower number is because of fewer women coming to the clinic after the new restrictions. It's more, you say, because of the restrictions on your clients being able to hand out the literature in kind of the way that you prefer to do. Sure. And the decline began before, is my belief, as best as I can represent to the Court. The decline began before. I can't necessarily attribute after the restrictions. I can't necessarily speak to that in all candor. Got it. Thank you. Okay. Thank you very much. We carried you beyond your allotted time, so you've got the full three minutes of rebuttal remaining. Thank you, Your Honors. All right. Mr. Laureau, let's hear from you. May it please the Court. I'm Luke Laureau. I have the privilege of representing the City of Clearwater in this matter. And I think unequivocally the District Court found that this ordinance was content neutral, that it was narrowly tailored, and that it left ample alternative avenues of communication. If you look at the record, the City of Clearwater was in a position where this one clinic, and it is the only clinic in the City of Clearwater, was the subject of demonstrations, confrontations, things that caused danger to the public health, safety, and welfare. And they were in a position where they felt that if they didn't do anything, matters would just be continuing to get worse. So what they did is they went through as thorough an analysis of . . . Were any of those findings against or involved the plaintiffs in this case? I don't think it addresses the plaintiffs, but what happens is the end result of the restriction is narrowly tailored enough that it does not impede the plaintiffs from accomplishing their goals. Well, I guess, I mean, that's the whole issue before us, right? I mean, the Supreme Court in McClellan says . . . it seems to me it sort of singles out two expressive activities as sort of special. One is what I think it calls close communication, and the other is leafleting. And just as a matter of, I don't know, physics, it seems those things are significantly curtailed by virtue of the buffer. And the City of Clearwater understood them to be significant, but the difference here from all of the other cases that have been argued in the brief from the appellant is that 35 feet, 15 feet, 25 feet, you can't talk to anybody from that distance. What the district court found was that these plaintiffs have every ability to speak to people getting in and out of their car, walking to the clinic. They don't have to raise their voice. It's easy for them to say, we're here to provide whatever counseling you think that you'd like to participate in. What about the leafleting aspect of McClellan? Do you think as a matter of, just again, sort of spatial physics, that they can reach across sort of 10 feet of space to hand someone a leaflet? Nothing prohibits someone from walking up and getting a leaflet at all. And the entire perimeter of this particular clinic is available for the distribution of leafleting. The only restriction is based entirely on vehicular safety, and I think that's what the city did. They tried to make it as minimal as they possibly could so that people on either side of the You want to be able to see what you're pulling out into, and you don't want to have a situation where somebody is stopped in the driveway, other cars coming up, no light. It's just one of those situations where the only issue that they were concerned with, with vehicular safety. Can I ask you a quick question? Can we first tell the story though? Because if the clients on the other side are saying, before I gave out 50 leaflets and now I only give out five, doesn't that demonstrate that whatever this policy is, is impeding the speech that they've been engaged in? I think the record below indicated that they didn't really keep track of that, and that after the ordinance was adopted, they sort of abandoned handing out leaflets. That was the finding made by the district court. And I guess the question would be, leafleting to whom? The cars going in and out, again, based on the evidence below, this is Florida. The windows are up. The air conditioning is on. If you knock on the window, I don't think anybody's going to hand someone a leaflet through a closed window. So there has to be some receptive acknowledgment that someone would like to speak to me. Somebody would like to convey the ideas that are presented by sidewalk counselors. And if I want to receive that message, I can. But not presumably staying in your car, if you just roll the window down and say, hey, I'm willing to accept whatever you have in your hand, can't get there, right? Not in the vehicles, no. So how then is this case, I mean, I understand that in McCullen, you've got a 35-foot buffer here, you've got a five-foot buffer, but I assume the answer that you gave to me, nothing impedes individuals from seeking out the leafleters to go get the leaflet. That would be true in McCullen as well, it's just you've got to walk a little further. But McCullen's different because there's no eye contact. Look at the distance that we are from each other. We're communicating well, I hope. We have microphones. It's a little bit different, I think, to walk up to someone personally with, as they say, a caring look on your face than to be yelling. I guess the driveway is, what, 18 feet wide? Is that what the record shows? So let's say the car goes down the center, right? So that would be nine feet on either side, plus five is 14. Maybe the car is a few feet wide on each side, but that's somewhat of a distance. You can't really have an intimate conversation over that distance. You shouldn't have that conversation if you're pulling into or out of vehicular traffic, and that's the point. The position that the city took is that a driveway is not a public forum. All of the rest of the clinic and the area around the clinic and the sidewalk going past the clinic, no restrictions whatsoever. Including the sidewalk passing through the driveway, which is a public right-of-way? That's a public right-of-way. That's correct. So is that also a public forum? It would be, but for the concern with vehicular traffic. That's the only difference. Does that make it not a public forum, or is that a government interest that we weigh within the public forum? No, it allows the city to explore ways to address its legitimate governmental interest to protect that vehicular traffic. It's different. Does this clinic have escorts with umbrellas? I think the evidence showed that the escorts with umbrellas, like the McCullen case and the other cases dealing with employees, law enforcement, fire safety people, those exceptions have been upheld, and the umbrellas really, no one put any evidence forward to say that any of the escorts professed any kind of pro-choice or competing messages. No, but I'm not saying that that makes it viewpoint-based, but it seems that if the concern is that anyone near a car would cause a vehicular safety issue, it seems that you also wouldn't have people with umbrellas near the cars. The umbrellas were there before the ordinance, so those have been, as observed by the lower court, those have been observed to have been there for a long time, and there's no evidence that that was in any way impeding anything. But why would a person with a leaflet impede, but a person with an umbrella would not? That's their choice. They have an exemption, and quite honestly, they have to get out of the way of the cars as well. Right, but what I'm saying is that potentially belies the suggestion that the intent is a clear path for the vehicles, set aside the viewpoint situation, but just to the narrow tailoring. If the idea is we have to keep this driveway completely clear for safety reasons, then why are people with umbrellas allowed to be in the driveway and people with pamphlets are not? Because the case law says that if that's your job, you're allowed to do that to escort the people that are coming to the clinic for the services that the clinic provides. But in those cases, was vehicular safety the justification that was put out for the policy in the first place? No, I think that it just dealt with those much larger setbacks, the larger, much more difficult areas of can't communicate with anybody at 35 feet. And I think the issue that I would stress is that the reason that this is narrowly tailored is that you can still, and this is again referring to the testimony given by the plaintiffs, they can get eye contact with people. They have that eye contact with the people that they like to talk to, no different from any other place. So really, I think that it was Mr. Tuthill that testified, you know, the way that I would go through the procedures to participate in sidewalk counseling was that I would try to get eye contact with somebody. If I didn't get eye contact, then I wasn't going to go forward, but that's what I do. And the ordinance doesn't really prevent that. I mean, it's the... Well, the ordinance, from what you're saying, it provides alternatives, arguably, for them to communicate their message. But alternatives also apply to the city side, too, that you have to at least do the best to exhaust other alternatives. And especially if there's no evidence, and this might be to the facial side or the as-applied side, no evidence that these plaintiffs have engaged in inappropriate or unlawful behavior, there are no other alternatives that the city could have constructed to account for that? Because it almost seems that they are getting punished for other bad apples. I would disagree because, again, and not to fall back on Ward versus Rock Against Racism, but it doesn't have to be the least restrictive. It just has to be available for alternative avenues of communication, and it has to be able to be shown to advance the governmental interest. All of the testimony from the police officers was that maybe we haven't had a lot of accidents here, but it's clearly, within our professional experience, a better situation so that people are driving more safely. I don't think... But that sounds prophylactic as opposed to reactive. And I think that Ward and the other cases say that's okay. I don't think you need to have some long history of tragedy and accidents to support the imposition of a regulation that's this de minimis. I think that's... Did the city consider a Saturday-only ban? I'm sorry? Did the city consider a Saturday-only ban or buffer zone? No, and I think that the evidence below, again, proved that Thursdays and Tuesdays had problems as well. And can you be specific about that? Walk me through the evidence that you had that Tuesdays and Thursdays were problems as well. I think there was a couple of instances brought out, and the calls for service, again, I'm going to a couple of different areas to support this. The calls for service in the legislative predicate that was provided by the city for the adoption of the ordinance showed that it was... Every day that the clinic was open, there were some concerns with some of the activities taking place there. That's pretty general. It is, but after the ordinance was adopted, even one of the plaintiffs who, in attempting to hand out one of the pamphlets, the individual came up to him in an area that wasn't part of the restricted area and knocked the pamphlets out of his hand, and it got into an altercation. So I don't think that... So you're saying he can't hand out pamphlets within the buffer zone because someone might be mad about it and knocked the pamphlets out of his hand? That doesn't necessarily seem like an ordinary justification for restriction on speech. It's a heckler's veto, isn't it? I have to agree with you, but I don't think that you can predict... The ordinance applies every day the clinic is open. I don't think you can predict what situations will arise based on the legislative record. But what if you can, though, based on the fact that this clinic has been open for how many years? Perhaps there's some mechanism that could be used to do that, but then you get to the individual rights. And again, least restrictive, every one of the plaintiffs can have eye contact. They can do everything they want to do throughout the whole area of this clinic. To make it that... I don't want to say specific, but to make it that different, I think, would defeat the purpose. You want to have some kind of consistent ability to protect the public health, safety and welfare of the driveway. Vehicular traffic is an issue that's going to be the same no matter what. It doesn't matter who's driving the car. It doesn't matter what day it is. Vehicular traffic is a goal, a legislative interest. But that goal is not served by keeping people with umbrellas out of that same area. The umbrellas, again, is a different issue. Well, and also to revisit one of Judge Abudu's questions earlier, just as in McCullen, there is an alternative, not just not a theoretical alternative, an actual alternative. There is an obstruction statute or an obstruction ordinance, right? So why isn't the obstruction ordinance that Clearwater has sufficient to address the problem? The issue there comes down to, and if you're referring to the streets and highways obstruction statute, the problem with that is that even based on the testimony of the officers and I think the plain language of the statute, it doesn't apply to this little driveway. That's not a street or highway. Well, we can talk about the officers' testimony, but the plain language of the statute defines street or highway as the entire width between the boundary lines of every way or place of whatever nature. Why does the plain language not reach this? I don't think I understand that. That was the determination made by law enforcement officers and essentially— Well, I mean, do we defer to their reinterpretation of the statute that is otherwise clear on its face? I mean, let me ask you this, maybe in two parts. Do you and I disagree that the plain language, setting aside the officer's testimony, the plain language reaches this situation? Of that statute? I would disagree just because it's not a street or a highway. Every way or place of whatever nature. It's a driveway. It's not a street or a highway in the eyes of the police. And I'm not saying that—I don't want to deviate from answering your question, but I think what we cited in our brief was that that statute in and of itself has been found to be unconstitutionally overbroad and it has a lot of problems. So I would respectfully submit that falling back to enforce a statute that has been shown in prior judicial decisions to have constitutional issues is probably not an alternative mechanism that would be appropriate. Do you have a citation or case name for that? Pardon me? Do you have a citation or case name for that point? I don't right now, but it was in my brief and we cited it as far as the, you know, they've amended it a few times because of that. I apologize, but I know it's in my brief. Has the current version suffered any constitutional setbacks? I'm so sorry? You said the statute had been amended in response to the cases that identified constitutional problems. Is the current version of the statute—has a court said that anything about the current version that Judge Newsom just read—has a court said that that is unconstitutional in any way? I don't know, but I would respectfully submit that in reviewing the language and the findings in the case law that the same problems exist. And I don't think it can be fixed as far as the issues raised about overbreadth. So that's just my respectful opinion about that. But the city of Clearwater did look at all those alternatives, and again, the only mechanism that they use doesn't limit anyone's ability to communicate. The plaintiffs still have the ability to maintain eye contact, to invite anyone to participate in counseling, invite anyone that wants to receive a pamphlet to come and approach them, and unfettered throughout the entire length of this particular facility, only preventing the ingress and egress portion of the driveway. And I would respectfully submit that the work that the city did to try to make this as least restrictive as they possibly could to allow the plaintiffs and other people similarly situated to convey their message without standing in the driveway or impeding the ingress and egress of traffic, I certainly would respectfully submit that the lower court was correct in finding that it was narrowly tailored and it left adequate alternative avenues of communication. Can I just ask one housekeeping question before you sit down? I think I understand from the record that the way this statute is enforced is that the officer will first issue a warning, then a citation, and then potentially will arrest people who are in violation. I thought I understood the ordinance to be a civil statute. So maybe this is a stupid question, but by what authority are officers arresting people for violation of this? I believe it's the resisting arrest, and let me just clarify the way that the ordinance is enforced. The limiting interpretation by the officers are they have to witness someone traversing the driveway with traffic more than once. Once they do that, they give that person a warning. If that person doesn't acknowledge that warning, then the police can issue a citation. And I think as far as the arrest, it's only if you resist the directions of the officer. Different than the ordinance, but I think for the most part, all of the enforcement methods used by the city have been in local code enforcement proceedings that are civil in nature. So I don't think that arrest and prosecution and criminal penalties are really part of this whole process. Okay. All right. Very well. Thank you so much for your presentation. Thank you for the privilege. All right. So we've got three minutes of rebuttal time for Mr. Brooks. Thank you, Your Honors. To the first point, Florida statute annotated 316.20451A1, along with this definition section 316.0389A, would apply to this intersection, or sorry, intersection, to this driveway. And that- Agree that it doesn't fall under the ordinance, as the other side seems to be digging its heels in maintaining? No, no. I don't think that is a big point of contention, Your Honor, between the two sides. We would say that it does apply, and it's point one. The A1A does not have constitutional challenges. We think it's perfectly constitutional as applied to us. It says you cannot impede, hinder, stifle, retard, or restrain traffic or passes thereon. And that includes, through the definition section, would include a driveway. So, we think that that's a law that was out there, and the city of Clearwater did not try to enforce it, but the police admitted they never tried to enforce it. Even if that ordinance did have constitutional issues, they could have drafted more carefully drawn statutes. Thomas More Society, for which I work, has helped cities draft constitutional ordinances that protect First Amendment rights. At the same time, they protect egress and egress without unduly burdening First Amendment rights. And then, of course, they always could have gone to the clinic and gotten the clinic to file a FACE Act and assisted with the clinic in filing a civil FACE Act, which has very severe penalties as a civil matter, if it's prosecuted as a criminal matter, it's even more severe. And that is certainly something that gets people to pay attention and start minding the law. So, you would agree that the penalties already in existence are far more severe, and arguably the two steps that law enforcement is allowed to take through this ordinance could be defined as a de-escalation type measure? Well, I don't think it was a de-escalation measure because, actually, in fact, I think the folks were immediately arrested. And after this ordinance was passed, the arrest increased, calls to this location increased. There was more trouble because this gave those who were inclined to, which it was not our clients, but those who were inclined to, another tool to weigh the police down and cause them trouble and cause confrontation. But again, that was on Saturdays, that wasn't on Tuesdays and Thursdays. And you're saying that your client's conduct would not violate the obstruction statute, but it would violate this ordinance, right? Well, because we can't go in. We can't go in. And importantly... But what I'm trying just to confirm is that you believe that your client's conduct did not violate the statutory ordinance that we've been talking about? Absolutely not. We have known about that statute. We have adhered to it for years. And I would like to point out that this is not a clinic where people come on the street. Everyone drives and parks, so there's no ability for us to approach someone as they're exiting their vehicle in a nice, friendly manner. People get out of their car and they're immediately swarmed with large umbrellas and there's no ability to make eye contact. They are then immediately shuffled into the facility. That may be the facility's right, but that infringes on our ability to make our communication. So if we're going to communicate, we have to turn into the yellers. We have to turn into people that have signs. And that makes us look like protesters. And that fundamentally transforms our message. From not being sidewalk counselors, it makes us protesters, which is what we aren't. And sidewalk counseling has been constitutionally protected all the way from the Supreme Court of the United States. And that's why an injunction in this case is so necessary and so important. Thank you, Your Honor. Okay, very well. Thank you both. Thank you. That case is submitted.